UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SYLVIA HERNANDEZ, </br></br>    Plaintiff, </br></br>  v. </br></br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, </br></br>    Defendant. | No. CV 15-768-PLA </br></br> **MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 3, 2015, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on March 2, 2015, and March 18, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on October 14, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on November 28, 1954. [Administrative Record ("AR") at 103.] She has past relevant work experience as a waitress and as a babysitter. [AR at 339, 384.]

On December 21, 2006, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since June 22, 2006. [AR at 24, 103-05.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 24, 89.] A hearing was held on May 13, 2008, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 35-76.] A vocational expert ("VE") also testified. [AR at 64-73.] On July 16, 2008, the ALJ issued a decision concluding that plaintiff was not under a disability from June 22, 2006, the alleged onset date, through July 16, 2008, the date of the decision. [AR at 24-31.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 17.] When the Appeals Council denied plaintiff's request for review on September 14, 2010 [AR at 1-9], plaintiff filed a civil action in this Court in case number CV 10-8414. On August 31, 2011, the Court reversed the decision to deny benefits, and remanded the matter for further administrative proceedings. [AR at 437-47.] On August 2, 2012, the Appeals Council acknowledged this Court's order remanding the matter for further administrative proceedings. [AR at 554-57.] The Appeals Council observed that during the appeal, plaintiff filed a new application for a period of DIB, as well as an application for Supplemental Security Income ("SSI"), and that the State agency had approved the applications, finding that plaintiff was limited to sedentary exertion and, therefore, that she had been disabled as of July 17, 2008, based on the Medical Vocational profile, found at 20 C.F.R. part 404, subpart P, appendix 2 (also known as the "grids"). [AR at 556.] The Appeals Council stated that "the period at issue on remand shall be limited to the period prior to July 17, 2008." [Id.] On November 5, 2012,[1] a hearing was held, at which time plaintiff appeared represented by an

---

[1] The hearing transcript mistakenly indicates that the hearing took place on November 5, 2013, rather than November 5, 2012. [Compare AR at 331 (ALJ's January 30, 2013, decision (continued...)

2

attorney, and testified on her own behalf. [AR at 352-87.] A medical expert ("ME") and a VE also testified. [AR at 361-71, 383-85.] On January 30, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability between June 22, 2006, and July 16, 2008. [AR at 331-40.] When the Appeals Council denied plaintiff's request for review on December 1, 2014 [AR at 324-27], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

### III.
### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin.,

---

[1](...continued)
stating that the hearing took place in November 2012) with AR at 352 (indicating the year as 2013)].

3

466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from June 22, 2006, the alleged onset date, through July 17, 2008.[2] [AR at 334.] At step two, the ALJ concluded that between June 22, 2006, and July 17, 2008, plaintiff had the severe impairments of morbid obesity; history of hammertoe surgery; history of recurrent incisional hernias status post surgeries; and mild multilevel arthritic changes in the back. [Id.] She also found that plaintiff's history of gallbladder surgery and Cesarean sections, and history of stroke and myocardial infarction, were non-severe. [Id.] At step three, the ALJ determined that during the period June 22, 2006, through July 17, 2008, plaintiff did not have an impairment or a combination of impairments that met or medically equaled any of the impairments in the Listings. [Id.] The ALJ further found that during the period June 22, 2006, through July 17, 2008, plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in 20 C.F.R. §

---

[2]   The ALJ concluded that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2010. [AR at 334.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

404.1567(c),[4] "except for any work involving lifting and carrying more than 30 pounds occasionally and more than 15 pounds frequently; work requiring more than occasional climbing ladders, stooping, crouching, crawling or balancing; and any work involving exposure to vibrating equipment." [AR at 334-35.] At step four, the ALJ concluded that from June 22, 2006, through July 17, 2008, plaintiff was able to perform her past relevant work as a waitress as generally and actually performed. [AR at 339.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 22, 2006, through July 17, 2008, "the date she was found to be disabled on her subsequent application." [AR at 32.]

## V.

## THE ALJ'S DECISION

**A.     PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred when she: (1) failed to properly evaluate the medically-related onset date of plaintiff's disability; and (2) evaluated the opinions of plaintiff's treating physician, Marvin S. Mina, M.D. [Joint Stipulation ("JS") at 5.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**B.     ONSET DATE OF PLAINTIFF'S DISABILITY**

In its August 2, 2012, remand order, the Appeals Council observed that plaintiff had exercised her right to file subsequent applications for benefits while her appeal of her prior application was pending. [AR at 556.] The Appeals Council noted that based on plaintiff's medical-vocational profile under the grids, including the State agency's finding that plaintiff had severe impairments of discogenic and degenerative disorders of the back, and disorders of bone and cartilage (osteoporosis) that reduced her RFC to the sedentary exertional level, her

---

    [4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

subsequent applications for benefits had been granted by the State agency, and she had been found to be disabled as of July 17, 2008.[5] [Id.] The Appeals Council affirmed the finding of disability as of July 17, 2008, and directed the ALJ to adjudicate the issue of disability prior to July 17, 2008. [Id.]

On January 30, 2013, the ALJ issued a decision finding that plaintiff had not been disabled at any time between June 22, 2006, and July 16, 2008. [AR at 328-40.] Plaintiff contends that the question herein is whether the conclusion that plaintiff was disabled only as of July 17, 2008, and not before, is supported by substantial evidence. [Joint Stipulation ("JS") at 6).] She argues that under the Administration's rules, the onset date of disability must be *medically* related. [JS at 6-7 (citing Soc. Sec. Ruling ("SSR")[6] 83-20).] Here, however, she submits that (1) the July 17, 2008, date of disability is *procedurally* related; and (2) the Commissioner was prevented from finding an earlier onset date of disability because of jurisdictional rather than medical reasons, since the Appeals Council "had jurisdiction over the period between June 22, 2006, and July 16, 2008," at the time of the disability determination. [Id. (citing SSR 83-20).] She also contends that since she was found disabled under grid rule 201.10 as of July 17, 2008, she also would have been eligible for benefits under that same grid rule from June 22, 2006, to July 16, 2008, assuming that -- as testified to by Dr. Klein -- the severity of her impairments remained essentially the same over that

---

[5] Plaintiff surmises that in finding plaintiff disabled, the Commissioner probably relied on grid rule 201.10. [JS at 8 (citing 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.10).] That rule provides that an individual such as plaintiff, who is classified as closely approaching advanced age, and who has a limited 11th grade education, and previous semi-skilled work experience where the skills are not transferable, is disabled. The Court notes that the Agency's determination that plaintiff was disabled as of July 17, 2008, was made the day *after* the ALJ's previous July 16, 2008, decision -- which was still on appeal at that time -- was issued.

[6] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

entire time period.[7] [JS at 9; see also AR at 367.] Pursuant to grid rule 201.10, if, as here, a person who is limited to sedentary work, who has less than a high school education, and whose past relevant work was semi-skilled with no transferable skills is "closely approaching advanced age" -- defined as ages 50-54 (20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(g)) -- this is itself sufficient for a finding of disability regardless of any other physical or mental limitation. 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 200.00(g), 201.10. As noted by plaintiff, with a birth date of November 28, 1954, she fell into the category of closely approaching advanced age during the *entire* period from June 22, 2006, to July 16, 2008. [JS at 9 (citation omitted).] Indeed, plaintiff became classified as "closely approaching advanced age" as of November 28, 2004, when she turned 50. Plaintiff argues that rather than reviewing the July 2006 through July 16, 2008, period de novo, consistent with the requirements of SSR 83-20 the ALJ should have found "a medical onset date rather than a procedural onset date given that [plaintiff] had already been found disabled as of July 17, 2008." [JS at 14.]

Defendant counters that the purpose of the ALJ's new decision was not to reevaluate the onset date established by plaintiff's subsequent favorable decision, but to determine whether plaintiff presented evidence of disability prior to July 17, 2008. [JS at 10.] Defendant notes that the ME testified that plaintiff had a list of impairments that did not meet or equal a listing level of severity, and determined that plaintiff could perform medium work, including occasional postural activities. [AR at 366.] The ME also "testified that the limitations were present during the period from June 2006 to the present," i.e., to November 5, 2012, the date of the hearing. [JS at 11 (citing AR at 366-69).] Defendant suggests that if plaintiff questions why, if she had the ability to perform medium exertional level work throughout the period of June 22, 2006, to July 16, 2008, just one day later she was found disabled and only capable of performing sedentary work, plaintiff "should have appealed that determination['s]" finding of disability on that date. [JS at 11.] Defendant also contends that even if there was later evidence of a back disorder and disorders

---

[7] The Court notes, however, that Dr. Klein found plaintiff capable of *medium* level work during the entire period from June 22, 2006, to November 5, 2012.

8

of the bone and cartilage as mentioned in the Appeals Council's order, "the instructions by the Appeals Council prevented any further review of the record beyond July 16, 2008." [JS at 12-13.]

The Court's review of the record shows that on the date of the November 5, 2012, hearing, the ALJ was unaware that the Agency had previously found plaintiff disabled as of July 17, 2008, pursuant to the grids, and that she had been awarded benefits pursuant to her subsequent applications for DIB and SSI. That disability finding was based in part on an RFC for sedentary exertion as a result of plaintiff's back and bone disorders. During the hearing the following colloquy occurred:

> ATTY: Well, she was found disabled as of July 17, 2008 on a subsequent claim. This is affirmed by the Appeals Council, Exhibit 16E.
>
> . . . .
>
> ALJ: . . . I saw that there was a subsequent app but I didn't see the affirmative . . . . No, I don't have any indication that the subsequent app was affirmed. . . . I showed the second application was filed in September of '08 after the July ALJ decision. So I don't have any evidence it was affirmed. Are you telling me she's on benefits?
>
> ATTY: She's on benefits.
>
> . . . .
>
> ALJ: In any event that's a procedural matter you and I can deal with but right now we're going to have [to] go ahead on the entire period. . . . . In any event do you want to change your request to a closed period or not?
>
> ATTY: Yes, we'd like to consider the [unadjudicated] period of June 2006 through July 17, 2008. That's the only period that we're seeking.
>
> ALJ: Okay. You're seeking a closed period but you tell me there was a subsequent grant?
>
> ATTY: Yes.
>
> ALJ: Well this is -- okay. . . . [¶] Well I'm having to deal with this as the entire period until I get that [Appeals Council order]. . . . [¶] Because I don't have it reflected. Normally that goes into the electronic file. So in the absence of that I have to consider the entire period. I understand your request and given that you may get me a document that clarifies that, then I may deal with that issue. Although it appears that she's going to have another problem anyway in 2010 as of the earnings generated.
>
> ATTY: I believe that was a matter that was already resolved.
>
> ALJ: Okay. Well it's a little complicated but let's not belabor it for the doctor.

[AR at 355-60.]

The record reflects that the ME was also unaware that plaintiff had been found to be disabled as of July 17, 2008. Indeed, the ME testified that plaintiff was capable of *medium* level work from June 22, 2006, to the date of the hearing, November 5, 2012. [AR at 361-79.] In reviewing the medical records, the ME noted several records post-dating July 17, 2008, including records reflecting plaintiff's low back pain "sustained as a result of a fall," and a lumbar CT scan done in January 2011 that showed "some moderate osteoarthritis but no spinal stenosis." [AR at 365-66.] In stark contrast to the Agency's decision finding that plaintiff was disabled as of July 17, 2008, based in part on a finding that she was limited to sedentary work as a result of her back and bone/cartilage disorders, the ME concluded that plaintiff had a "light to medium RFC" with no sitting, standing, or walking limitations, she could lift 15 pounds frequently and 30 pounds occasionally, and she could occasionally climb ladders, stoop, crouch, crawl, and balance. [AR at 366.] In fact, the ME confirmed that this was an "appropriate assessment as of the onset date alleged June '06 through to the present." [AR at 367.]

SSR 83-20 controls how the Commissioner establishes a disability onset date. As noted above, "[h]ow long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." SSR 83-20. SSR 83-20 applies "when there is an ambiguity as to the onset date of the disability." Richardson v. Astrue, 2012 WL 5904733, at *5 (N.D. Cal. Nov. 26, 2012). When such ambiguity exists, "the ALJ must assist the claimant in creating a complete record by inferring an onset date," and such "assistance may require the ALJ to call a medical expert to testify." Id. Additionally, an ALJ has the duty "to fully and fairly develop the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). This duty is triggered when the evidence in the record is ambiguous or inadequate to allow for proper evaluation thereof. Id.; Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). "In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made," the ALJ is required to "call upon the services of a medical

advisor and to obtain all evidence which is available to make the determination." DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir. 1991); see also Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998) ( "[T]he . . . ALJ . . . should call on the services of a medical advisor when onset must be inferred.") (quoting SSR 83-20); Morgan v. Sullivan, 945 F.2d 1079 (9th Cir. 1991); see Booker v. Astrue, 2009 WL 3297250, at *13 (C.D. Cal. Oct. 8, 2009) (pursuant to SSR 83-20, it is necessary to infer the proper onset date for a slowly progressive impairment when the alleged onset and the date last worked are far in the past and adequate medical records are not available).

The analogous case of Moon v. Colvin, 542 F. App'x 646 (9th Cir. 2013) is instructive. In that case, the claimant had been found disabled in May 1995, and in January 2007 he applied for adult child disability benefits, which required a disability onset date before the claimant's 22nd birthday in September 1993 in order to qualify for those benefits. Moon, 542 F. App'x at 646-47. Although Moon had been found disabled in May 1995, the record did not conclusively show *when* he became disabled, and there was some evidence suggesting that the onset date may have been earlier than May 1995. Id. at 647. The Ninth Circuit found that pursuant to his obligation to develop the record, the ALJ erred by not acknowledging the May 1995 disability determination and by not obtaining expert testimony regarding whether the onset of Moon's disability before his 22nd birthday should have been inferred. Id. at 647.

In this case, although the disability finding was *subsequent* to the July 16, 2008, decision initially appealed from, the *State agency* found plaintiff to be disabled as of July 17, 2008, pursuant to the grids, based in part on a finding that plaintiff had severe impairments including disorders of the back, and of bone and cartilage that reduced her RFC to sedentary, and in part on vocational factors relating to age and prior work experience. It appears that these disorders would be of the progressive kind as there is no evidence of any trauma on July 17, 2008, that would have caused these conditions. Thus, it is likely that the July 17, 2008, date of disability was not *medically* related, but due to the fact that the ALJ's July 16, 2008, decision was still on appeal and the Agency, therefore, was *without jurisdiction* to consider plaintiff's disability prior to that date. [But see JS at 11 (defendant suggests -- without supporting evidence -- that plaintiff may have

suggested a new onset date of July 17, 2008, in her subsequent application).]

Although the ME testified at the hearing, because neither the ALJ nor the ME had before them the Appeals Council's remand order setting forth the disability finding from the subsequent decision, the ALJ instead reviewed the period between June 22, 2006, and July 17, 2008, de novo, and did not seek testimony from the ME regarding the need, if any, to infer plaintiff's medically-related disability onset date based on the intervening finding that plaintiff was disabled as of July 17, 2008. Additionally, although in her decision the ALJ noted the fact of the subsequent application upon which plaintiff was found to be disabled as of July 17, 2008 [AR at 331-32], she failed to consider the impact, if any, of that decision on her adjudication of the period between June 22, 2006, and July 17, 2008. As noted, while plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent, "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); Tonapetyan, 242 F.3d at 1150 (citation omitted). This duty is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459-60. Accordingly, under the unique procedural circumstances herein, the Court finds that there is an ambiguity concerning plaintiff's disability onset date and the ALJ was required to call upon the services of a medical advisor and to obtain all available evidence to make the determination. SSR 83-20; Armstrong, 160 F.3d at 590. The ALJ did not fulfill this duty.

Based on the foregoing, the present record establishes that the Agency found plaintiff was disabled as of July 17, 2008, pursuant to the Agency's procedural grid rules, but does not necessarily establish whether July 17, 2008, was the *medically*-related disability onset date, or whether plaintiff's impairments existed at a disabling level of severity as of the June 2006 alleged onset date, or as of some other date prior to July 17, 2008. Therefore, although the administrative proceedings already have been protracted, and the administrative record already is voluminous, a limited remand, as discussed below, is required.

/

/

# VI.

# **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, in light of the fact that the Agency found plaintiff to be disabled as of July 17, 2008, and apparently neither the ALJ nor the ME had that determination or the evidence on which it was based before them, further development of the record is necessary so that the issue of whether plaintiff was disabled prior to July 17, 2008, may be resolved. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because neither the ALJ nor the ME considered the impact, if any, of the intervening Agency decision finding that based on medical-vocational factors plaintiff was disabled as of July 17, 2008, the ALJ on remand must reconsider whether plaintiff was disabled at any time between June 22, 2006, through July 16, 2008.[8] To effectuate this finding, the ALJ shall call upon the services of an ME and obtain *all* evidence that is available to make that determination, including, but not limited to, consideration of the opinion of the treating physician, Dr. Mina,[9] and any other records submitted in support of the intervening decision finding disability as of July 17, 2008, that are not already contained in the

---

[8] Nothing in this decision is intended to disturb the intervening finding that plaintiff was disabled as of July 17, 2008.

[9] Because the ALJ will need to review the medical evidence on remand, the Court does not address plaintiff's second issue regarding the ALJ's evaluation of the opinions of plaintiff's treating physician, Dr. Mina.

instant Administrative Record. In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Finally, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether at any time between June 22, 2006, and July 17, 2008, plaintiff was capable of performing her past relevant work as a waitress or babysitter. If she was not so capable, then the ALJ should proceed to step five and determine, with the assistance of a VE if necessary, whether there were jobs existing in significant numbers in the regional and national economy that plaintiff could still have performed.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 12, 2015

　　　　　　　　　　　　　　　　　／s／ Paul L. Abrams
　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE